| | |
|---|---|
| **ALICIA OAKES** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-9743** |
| **COUNTRYWIDE HOME LOANS, INC.** | **SECTION: "S" (5)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Bank of America, N.A.'s Motion for Summary Judgment (Doc. #174), is **GRANTED**, as to plaintiff's claims against it for fraud, conversion , and violations of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), Louisiana Revised Statutes § 51:1401, et. seq., and those claims are **DISMISSED WITH PREJUDICE.** The motion is **DENIED**, as to plaintiff's claim against Bank of America for negligence.

## BACKGROUND

Defendant and third-party plaintiff, Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP, incorrectly sued as Countrywide Home Loans, Inc., filed a motion for summary judgment seeking dismissal of plaintiff's claims against it, arguing that those claims are prescribed and that plaintiff cannot prevail on the merits of her claims.

Plaintiff, Alicia Oaks, owned property in Indiana and in Louisiana. Bank of America was the mortgage servicer for both properties. In March 2006, Oakes decided to refinance the Louisiana property. She chose Ark-La-Tex Financial Services, LLC d/b/a Benchmark Mortgage and loan officer Patrick Holder, who was a branch manager for Benchmark, to originate the new mortgage.

Oakes hired attorney Chad B. Ham to handle the closing through his companies Audubon Title Company and Bell Title Company.

On March 21, 2006, Benchmark and Holder provided Ham with a page from Oakes's credit report with loan number 7298843 circled, and instructed Ham to obtain payoff information for that loan. Loan number 7298843 represents Oakes's Indiana property, and the payoff amount was $105,642.25.

On March 31, 2006, Ham, through Audubon Title, initiated a wire transfer of $105,642.25 in Oakes's name stating that it was to be applied to the Louisiana property, but referencing the payoff of loan number 72988423, the loan number of the Indiana property. Bank of America applied the funds, the exact amount required to satisfy the note on the Indiana property, to loan number 72988423.

On April 6, 2006, Oakes received a letter from Bank of America returning her April 1, 2006, payment for the mortgage on the Indiana property, and informing her that the note had been fully repaid. Oakes notified Ham that note on the Indiana property had been paid-off, rather than the one on the Louisiana property.

On April 13, 2006, Bank of America wrote to Oakes to inform her that it was refunding the escrow balance for the Indiana note because it had been paid in full, and enclosed a check made payable to her in the amount of $1,447.33.

On April 21, 2006, Ham notified Bank of America of the mistake regarding the application of the funds. Thereafter, Bank of America returned the money to Ham after deducting a $1,000 reinstatement fee, and Ham executed an indemnification agreement in favor of Bank of America.

On June 12, 2006, Bank of America requested that Ham and Bell Title execute an indemnification agreement, and advised them that a $1,000 fee for the reinstatement of the Indiana mortgage would be deducted from the $105,642.25 sum that was to be returned.

In August 2006, Oakes and Ham had a telephone conference with a Bank of America employee. Oakes claims that the Bank of America employee offered to resolve the problem with no penalties to Oakes, but after discussing the matter with a supervisor, rescinded the offer and demanded Oakes pay a $1,000 penalty, plus six months of interest, penalties, and back-payments.

On December 21, 2006, Bank of America reinstated the mortgage on the Indiana property. On December 28, 2006, Bank of America wired $104,642.25 to Audubon Title's checking account at Capital One Bank. Ham admitted to receiving the funds.

Oakes filed this suit against Bank of America in the Civil District Court, Parish of Orleans, State of Louisiana on May 1, 2007. Bank of America removed the action to the United States District Court for the Eastern District of Louisiana on December 21, 2007. Oakes alleges that Bank of America's actions constitute fraud, negligence, conversion, and unfair trade practices.[1] Bank of America filed a third-party complaint against Ham for indemnification pursuant to the indemnification contract. Bank of America also alleged that Ham was negligent, and that he is liable to it for detrimental reliance. Oakes amended her complaint to include Ham as a defendant, alleging that she did not know about the indemnification agreement between Ham and Bank of America, and that Ham has not accounted for the funds that he allegedly received from Bank of America.

---

[1] Oakes does not allege that Bank of America breached the mortgage contract on either property, nor does she allege a claim for detrimental reliance against Bank of America.

On January 18, 2011, Bank of America filed an amended third-party complaint adding Benchmark and Holder as third-party defendants. Bank of America alleges that, if it is found liable to Oakes, Benchmark and Holder owe it contribution and indemnity because their negligence caused Oakes's damages. Similarly, on January 21, 2011, Ham, Audubon Title, and Bell Title filed a third-party complaint against Benchmark and Holder alleging that, if they are found liable to Oakes, Benchmark and Holder owe them contribution and indemnity because Benchmark's and Holder's negligence caused Oakes's damages.

Oakes filed a supplemental and amended complaint seeking to assert claims against Benchmark and Holder, stating the she reiterates and re-alleges the allegations of her previous complaints and incorporates the third-party complaints against Benchmark and Holder as those pleadings pertain to Benchmark's and Holder's liability to her. The court granted Benchmark's and Holder's motions to dismiss finding that Oakes did not plead enough facts to state claims for relief against them that were plausible on their faces (Docs. #106, 132).

On December 27, 2011, Benchmark and Holder filed motions for summary judgment regarding the third-party complaints against them. They argued that Bank of America, Ham, Audubon Title, and Bell Title cannot sustain claims against them for contribution and indemnity because Oakes's claims against Bank of America, Ham, Audubon Title, and Bell Title are prescribed. This court denied the motion finding that a cause of action for indemnity is a separate substantive cause of action, with a ten-year prescriptive period, that does not accrue unless and until the third-party plaintiffs are cast in judgment, which has not yet occurred in this case. (Doc. #173).

On May 10, 2012, Bank of America filed a motion for summary judgment arguing that Oakes's claims against it sound in tort and are prescribed because she filed her suit more than a year after she knew of the alleged damage. Bank of America also argued that Oakes cannot prevail on her claims against it because she cannot prove that Bank of America breached a duty owed to her.

## ANALYSIS

**A.     Summary Judgment Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.      Bank of America's Motion for Summary Judgment**

**1.      Prescription**

Bank of America argues that Oakes's claims against it are prescribed.  Bank of America contends that Oakes's claims against it sound in tort, and are subject to a one year prescriptive period, and that Oakes knew about some appreciable harm more than one year before she filed suit. Specifically, Bank of America argues that Oakes discovered the mixup in April 2006, when Bank of America returned her mortgage payment and refunded her escrow payments for the Indiana property.  Bank of America contends that, at that time, Oakes could reasonably ascertain that she was potentially the victim of a tort regarding the refinancing of the Louisiana property, and that she could be assessed late fees once the problem was corrected, that loans on both properties could be placed in default, and that her insurance and tax obligations might not be met for the Indiana property.

Oakes, Ham, Audubon Title, and Bell Title argue that Oakes's claims against Bank of America are not prescribed.  They argue that Oakes was not damaged by the application of the money to the wrong loan until August 2006 when Bank of America demanded payment of a $1,000 penalty, plus six months of interest, penalties, and back-payments.

Oakes alleges tort claims for fraud, negligence, and conversion, and claims under the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), Louisiana Revised Statutes § 51:1401, et. seq., against Bank of America.  This court has diversity subject matter jurisdiction under 28 U.S.C. § 1332.  When a federal court sits in diversity, it applies the state

substantive law, including the state prescription periods. <u>See</u> <u>Guar. Trust Co. v. York</u>, 65 S.Ct. 1464, 1470-71 (1945).

### a.    Oakes's LUTPA Claims against Bank of America

Under LUTPA, any unfair method of competition and unfair or deceptive act or practice in the conduct of any trade or commerce is unlawful. <u>S. Gen. Agency, Inc. v. Safeway Ins. Co. of La.</u>, 769 So.2d 606, 608 (La. Ct. App. 2000) (citing LA. REV. STAT. § 51:1401, <u>et.</u> <u>seq.</u>). However, LUTPA does not apply to "[a]ctions or transactions subject to the jurisdiction of the . . . commissioner of financial institutions . . . the financial institutions and insurance regulators of other states, or federal banking regulators who possess authority to regulate unfair or deceptive trade practices." LA. REV. STAT. § 51:1406(1). Bank of America was a mortgage lender licenced by and subject to the jurisdiction of the Louisiana Office of Financial Institutions. Therefore, LUTPA is inapplicable to Oakes's claims against Bank of America, and those claims are DISMISSED WITH PREJUDICE.

### B.    Oakes's Tort Claims against Bank of America

Louisiana Civil Code article 3492 provides that delictual actions, such as fraud, conversion, and negligence, are subject to a liberative prescription of one year that commences to run from the day the injury or damage is sustained. In <u>Harvey v. Dixie Graphics, Inc.</u>, 593 So.2d 351, 354 (La. 1992), the Supreme Court of Louisiana explained that:

> [Louisiana Civil Code article 3492] is rooted in the recognition that a prescriptive period is a time limitation on the exercises of a right of action, and a right of action in tort comes into being only when the plaintiff's right to be free of illegal damage has been violated. When damages are not immediate, the action in

damages thus is formed and begins to prescribe only when the tortious act actually produces damage and not on the day that the act was committed.

The damage suffered must at least be actual and appreciable in quality – that is, determinable and not merely speculative. But there is no requirement that the quantum of damages be certain or that they be fully incurred, or incurred in some particular quantum, before the plaintiff has a right of action. Thus, in cases in which a plaintiff has suffered some but not all of his damages, prescription runs from the date on which he first suffered actual and appreciable damage, even though he may thereafter come to a more precise realization of the damages he has already incurred or incur further damage as a result of the completed tortious act.

(citations omitted). Therefore, damage is sustained "when it has manifested itself with sufficiency certainty to support accrual of a cause of action." Bailey v. Khoury, 891 So. 2d 1268, 1283 (La. 2005).

Under Louisiana law, a cause of action accrues when a party has the right to sue, which requires fault, causation, and damages. Ebinger v. Venus Constr. Corp., 65 So.3d 1279, 1286 (La. 2011) (citing Bourgeois v. A.P. Green Indus., Inc., 783 So. 2d 1251. 1259 (La. 2001); Owens v. Martin, 449 So. 2d 448, 451 (La. 1984)). "Further, liberative prescription of one year generally begins to run when the victim knows or should know of the damage, the delict and the relationship between them." Bailey, 891 So.2d at 1283 (citing Branch v. Willis-Kinghton Med. Ctr., 636 So.2d 211, 212 (La. 1994)). Thus, "prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." Id. (quoting Campo v. Correa, 828 So.2d 502, 508 (La. 2002)).

Generally, the party asserting prescription has the burden of proof. <u>Eastin v. Entergy Corp.</u>, 865 So.2d 49, 54 (La. 2/6/2004). "However, if prescription is evident on the face of the pleadings, . . ., the burden shifts to the plaintiff to show that the action has not prescribed." <u>Id.</u> In other words, the plaintiff must establish a suspension or interruption of the prescriptive period. <u>Bartucci v. Jackson</u>, 245 Fed. App'x 254, 257 (5th Cir. 2007).

In this case, Oakes's alleged tort causes of action against Bank of America accrued in August 2006. Although Oakes had reason to suspect that a tort may have occurred in April 2006 when she discovered that the wrong mortgage was paid off, she did not sustain any appreciable harm until August 2006 when Bank of America informed her that she had to pay a $1,000 penalty, plus six months of interest, penalties, and back-payments. Before that occurred, all potential harm was speculative. Therefore, Oakes's tort claims against Bank of America have not prescribed.

## 2. Oakes's Tort Claims Against Bank of America

Bank of America argues that Oakes cannot prevail on her tort claims against it because she cannot prove the elements of those claims.

### a. Fraud

Under Louisiana law, "[f]raud is a misrepresentation or suppression of the truth made with the intention whether to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." La. Civ. Code art. 1953. Proving fraud requires demonstrating that: (1) there was an intent to defraud or gain an unfair advantage; and, (2) there was resulting loss or damage. <u>Mooers v. Sosa</u>, 798 So.2d 200, 207 (La. Ct. App. 2001) (citing <u>First Downtown Dev. v. Cimochowski</u>, 613 So.2d 671, 677 (La. Ct. App. 1993)).

Oakes cannot prevail on her fraud claim against Bank of America because she has not presented any evidence that Bank of America had an intent to defraud her or gain an unfair advantage. Oakes and her agents, Ham, Bell Title, and/or Audubon Title identified the loan number for the Indiana property and sent the precise amount to satisfy that loan to Bank of America in connection with the transaction. Bank of America did as it was instructed and satisfied the loan number identified. There is no evidence that Bank of America had any intention to defraud Oakes in following such instructions.

### b. Conversion

"Conversion is defined as an act in derogation of the plaintiff's possessory rights or any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently, or for an indefinite time." Chrysler Credit Corp. v. Whitney Nat'l Bank, 51 F.3d 553, 557 (5th Cir.1995). "The tort of conversion is committed when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with the owner's rights." F.G. Bruschweiler (Antiques) Ltd. v. GBA Great British Antiques, L.L.C., 860 So.2d 644, 649 (La. Ct. App. 2006) (citing Aymond v. State, Dept. of Revenue and Taxation, 672 So.2d 273, 275 (La Ct. App. 1996)). Specifically, the tort of conversion is committed when any of the following occurs: (1) possession is acquired in an unauthorized manner; (2) the chattel is removed from one place to another with the intent to exercise control over it; (3) possession of the chattel is transferred without authority; (4) possession is withheld from the owner or possessor; (5) the chattel is altered or destroyed; (6) the chattel is used improperly; or (7) ownership is asserted over the chattel. Daul Drilling Co. v. Mills Equip. Inv., Inc., 721 So.2d 853, 856 (La. Ct. App. 1998). In order to prevail

on a claim of conversion under Louisiana law, the plaintiff must prove that: (1) he owned or had the right to possess funds that were misused by the defendant; (2) the misuse was inconsistent with the plaintiff's rights of ownership; and (3) the misuse constituted a wrongful taking of the funds. Chrysler Credit Corp. v. Whitney Nat'l Bank, 798 F.Supp. 1234, 1236-37 (E.D .La.1992) (citing Chrysler Credit Corp. v. Perry Chrysler Plymouth, 783 F.2d 480, 484 (5th Cir.1986)).

Oakes cannot prevail on her conversion claim against Bank of America because she has not presented any evidence that Bank of America wrongfully exercise or assumed authority over her money, depriving her of it. Ham, Oakes' agent, sent Bank of America the money with instructions to pay off the Indiana loan, which is what occurred. Further, Bank of America eventually returned the money to Ham for Oakes's account. Because Bank of America did not deprive Oakes of the money permanently or for an indefinite amount of time, it is not liable to her for conversion.

### c. Negligence

Under Louisiana law, to prevail on a claim for negligence, the plaintiff must prove: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element). Lemann v. Essen Lane Daiquiris, Inc., 923 So.2d 627, 633 (La.2006) (citing Fowler v. Roberts, 556 So.2d 1, 4 (La.1989)). A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. Mathieu v. Imperial Toy Corp., 646 So.2d 318, 321 (La.1994).

"Whether a duty is owned is a question of law; whether defendant has breached a duty owed is a question of fact." Brewer v. J.B. Hunt Transp., Inc., 35 So.3d 230, 240 (La. 2010).

Oakes claims that Bank of America owed her a duty to make sure that the correct loan was paid, and that it breached that duty by applying the money to the wrong loan. Bank of America's "Payoff Instructions" provide:

> Payoff funds must be made payable to [Bank of America] and will be accepted by WIRE or CERTIFIED FUNDS ONLY. They MUST reference the [Bank of America] loan number, property address and borrower's name in the OBI (Originator Beneficiary Information) field of the wire transfer or on the face of the check and must be sent per the instructions below. Failure to do so may cause delays resulting from additional interest due or the return of the funds to the remitter.

Although Ham included the wrong loan number and sent the exact amount to satisfy the Indiana loan, he included the Louisiana property address. Ham argues that the mixup would not have occurred if Bank of America had compared the information to its records because it would have noticed that the discrepance. Bank of America argues that it did not breach any duty because it applied the funds as it was instructed by Oakes's agents.

As a loan services, Bank of America has a duty to ensure that it properly applies loan proceeds when a client intends to payoff a loan. There are genuine issues of material fact regarding whether Bank of America failed to properly apply the funds. Further, there are also issues of fact regarding whether Oakes was harmed by the misapplication of the mortgage funds before Bank of America returned the money due to the assessment of fees and penalties. Therefore, Bank of America is not entitled to summary judgment on Oakes's negligence claim.

**CONCLUSION**

**IT IS HEREBY ORDERED** that Bank of America, N.A.'s Motion for Summary Judgment (Doc. #174), is **GRANTED**, as to plaintiff's claims against it for fraud, conversion, and violations of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), Louisiana Revised Statutes § 51:1401, <u>et. seq.</u>, and those claims are **DISMISSED WITH PREJUDICE.** The motion is **DENIED**, as to plaintiff's claim against Bank of America for negligence.

New Orleans, Louisiana, this  <u>19th</u>  day of June, 2012.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**